**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LONNIE WISEMAN,

      Petitioner,

                                No. 16-cv-00700-JAP/KRS

v.                               No.  96-cr-00072-JAP

UNITED STATES OF AMERICA,

      Respondent.


<u>**MEMORANDUM OPINION AND ORDER**</u>

On May 16, 2017, Petitioner Lonnie Ray Wiseman filed his FIRST AMENDED

MOTION TO VACATE JUDGMENT UNDER 28 U.S.C. § 2255 (CV Doc. 10) (First Amended

Motion). The First Amended Motion has been fully briefed,[1] and the United States Court of

Appeals for the Tenth Circuit has held that it is not a second-or-successive § 2255 Motion.[2]

Accordingly, the Court has considered the merits of Petitioner's claims, but will dismiss the First

Amended Motion.

I.      **DISCUSSION**

---

[1] *See* FIRST AMENDED MOTION TO VACATE JUDGMENT UNDER 28 U.S.C. § 2255 (CV Doc. 10) (First Amended Motion); UNITED STATES' RESPONSE TO FIRST AMENDED MOTION TO VACATE JUDGMENT UNDER 28 U.S.C. § 2255 (CV Doc. 13) (Response); PETITIONER'S REPLY TO GOVERNMENT'S RESPONSE TO FIRST AMENDED MOTION TO VACATE JUDGMENT UNDER 28 U.S.C. § 2255 (CV Doc. 18) (Reply); UNITED STATES' SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS RESPONSE TO FIRST AMENDED MOTION TO VACATE JUDGMENT UNDER 28 U.S.C. § 2255 (CV Doc. 26) (Supplemental Response); PETITIONER'S SUPPLEMENTAL BRIEF REGARDING SESSIONS V. DIMAYA AND ITS EFFECT ON HIS AMENDED MOTION UNDER 28 U.S.C. § 2255 (CV Doc. 27) (Supplemental Brief); PETITIONER'S SUPPLEMENTAL BRIEF REGARDING THIS COURT'S JURISDICTION TO DECIDE HIS CLAIM UNDER *WEEKES V. FLEMING* (CV Doc. 29); UNITED STATES' SECOND SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS RESPONSE TO FIRST AMENDED MOTION TO VACATE JUDGMENT UNDER 28 U.S.C. § 2255 (CV Doc. 30); PETITIONER'S REPLY TO THE GOVERNMENT'S SECOND SUPPLEMENTAL BRIEF (CV Doc. 33).
[2] *See* ORDER (CV Doc. 22).

In April of 1997, a jury convicted Petitioner of six counts of robbery affecting interstate commerce (Counts 1-5 and 7), contrary to 18 U.S.C. § 1951(a), and two counts of use of a firearm during a crime of violence (Counts 6 and 8), contrary to 18 U.S.C. § 924(c)(1). CR Docs. 148, 188–89. Petitioner's convictions were based on a series of grocery store robberies carried out by Petitioner and an accomplice in New Mexico. *See United States v. Wiseman*, 172 F.3d 1196, 1201–03 (10th Cir. 1999), *abrogated by Rosemond v. United States*, __ U.S. __ , 134 S. Ct. 1240, 1251 (2014). In counts 6 and 8, the indictment charged Petitioner under both § 924(c) and 18 U.S.C. § 2, which relates to aider and abettor liability. *Id.* at 1217. Petitioner was convicted of the § 924(c) offenses on the theory that he had aided and abetted his companion's use of a Tec-9 firearm during the last two robberies, in Silver City and Clovis, New Mexico. *Id.* Petitioner challenges his firearm convictions under *Johnson v. United States*, __ U.S. __ , 135 S. Ct. 2551, 2563 (2015) (*Johnson II*) and under *Rosemond*, which abrogated the legal standard announced by the Tenth Circuit Court of Appeals in affirming Petitioner's § 924(c) convictions on his direct appeal. *See Wiseman*, 172 F.3d at 1217. Petitioner also argues that under *Weekes v. Fleming*, 301 F.3d 1175 (10th Cir. 2002), Petitioner should receive certain credit against his federal sentence. The United States argues that Petitioner's claims under *Rosemond* and *Weekes* are time barred and that his *Johnson II* claim is without merit.

A.      ***Johnson II* Claim**

For the purposes of § 924(c)(1), a crime of violence is defined under § 924(c)(3) as a felony offense that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subsection (A) is known as the elements clause, while Subsection (B) is the residual clause. *United States v. Salas*, 889 F.3d 681, 684 (10th Cir. 2018), *en banc reh'g denied* (10th Cir. May 23, 2018). The residual clause of § 924(c)(3) is similarly worded to the residual clause of the Armed Career Criminal Act (ACCA). *See* § 924(e)(2)(B)(ii) (defining "violent felony" as one which "otherwise involves conduct that presents a serious potential risk of physical injury to another[.]").

In *Johnson II*, decided June 26, 2015, the Supreme Court held that the residual clause of the ACCA is unconstitutionally vague. *See* 135 S. Ct. at 2563. *Johnson II* announced a new rule of constitutional law that is retroactively applicable to cases on collateral review. *See Welch v. United States*, __ U.S. ___, 136 S. Ct. 1257 (2016). Accordingly, a claim based on the right recognized by the Supreme Court in *Johnson II* is timely under § 2255(f)(3) if it is filed by June 26, 2016.

Petitioner claims that the residual clause of § 924(c)(3) is void for vagueness under *Johnson II*. He asserts that his predicate offense of Hobbs Act robbery is not a crime of violence under the elements clause of § 924(c)(3), and consequently, that his § 924(c)(1) convictions must be vacated. Although Petitioner did not file his First Amended Motion until May 16, 2017, he first raised his vagueness challenge to § 924(c)(3)(B) on June 24, 2016, when he filed the original § 2255 motion challenging his amended judgment. CV Doc. 1. The Court finds that Petitioner's claim will relate back to June 24, 2016, the date of the original pleading in which Petitioner's vagueness challenge was raised, and that it was therefore filed within one year of the decision in *Johnson II*. *See* Fed. R. Civ. P. 15(c); *see also United States v. Espinoza-Saenz*, 235 F.3d 501, 505(10th Cir. 2000) (holding that under Rule 15(c) an untimely amendment to a § 2255 motion that clarifies or amplifies a claim or theory in the original motion may, in the

court's discretion, relate back to the date of the original motion if the original motion was timely filed). The United States does not challenge the timeliness of Petitioner's § 924(c)(3)(B) claim, nor does it argue that the right asserted by Petitioner has not been made retroactively applicable.[3] Accordingly, the Court will address the merits of Petitioner's claim.

In *Sessions v. Dimaya*, ___ U.S. ___, 138 S. Ct. 1204, 1223 (2018), the Supreme Court held that the residual clause of 18 U.S.C. § 16 is unconstitutionally void for vagueness. *Dimaya* reached this conclusion through a "straightforward application" of *Johnson II*, which dictated the result in *Dimaya* because of the similarity between § 16(b) and the residual clause of the ACCA. *Id.* at 1213, 1223.

> *Johnson* tells us how to resolve this case. That decision held that "[t]wo features of [ACCA's] residual clause conspire[d] to make it unconstitutionally vague." 576 U.S., at ——, 135 S.Ct., at 2557. Because the clause had both an ordinary-case requirement and an ill-defined risk threshold, it necessarily "devolv[ed] into guesswork and intuition," invited arbitrary enforcement, and failed to provide fair notice. *Id.*, at ——, 135 S.Ct., at 2559. Section 16(b) possesses the exact same two features. And none of the minor linguistic

---

[3] The Tenth Circuit Court of Appeals has held that § 2255(f)(3) does not extend the time for filing beyond one year after conviction when a claim is ostensibly based on *Johnson II* unless the defendant was actually sentenced under the ACCA. *See United States v. Greer*, 881 F.3d 1241 (10th Cir. 2018). The Tenth Circuit has applied *Greer* to claims that § 924(c)(3)(B) is void for vagueness under *Johnson II* when denying certificates of appealability in recent attempts to challenge the dismissal of § 2255 petitions as untimely. *See United States v. Santistevan*, ___ F. App'x ___, No. 17-1132, 2018 WL 1779331 (10th Cir. Apr. 13, 2018); *United States v. Salvador*, ___ F. App'x ___, No. 17-1081, 2018 WL 1001264 (10th Cir. Feb. 21, 2018). *Greer* may have been called into question by the Supreme Court's subsequent decision in *Sessions v. Dimaya*, ___ U.S. ___, 138 S. Ct. 1204, 1213–1216 (2018), which applied *Johnson II* to the residual clause in 18 U.S.C. § 16. However, the Court need not make that determination here because the United States has waived any argument for untimeliness or nonretroactivity as to Petitioner's vagueness challenge to § 924(c)(3)(B). *See* Resp. at 9; *Wood v. Milyard*, 566 U.S. 463, 466 (2012) ("A court is not at liberty, we have cautioned, to bypass, override, or excuse a State's deliberate waiver of a limitations defense."); *Day v. McDonough*, 547 U.S. 198, 205, 209 (2006) ("[C]ourts are under no obligation to raise the time bar sua sponte." The statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) is a "defense on a par with failure to exhaust state remedies, a procedural bar, and non-retroactivity"); *United States v. Miller*, 868 F.3d 1182, 1185-86 (10th Cir. 2017) (declining to consider government's timeliness argument raised for the first time in a Fed. R. App. P. 28(j) letter and addressing the merits of a vagueness challenge to the Guidelines under *Johnson II*).

disparities in the statutes makes any real difference. So just like ACCA's residual clause, § 16(b) "produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*, at ——, 135 S.Ct., at 2558.

*Id.* at 1223. In reliance on *Johnson II* and *Dimaya*, the Tenth Circuit Court of Appeals has determined that the residual clause of § 924(c)(3), which contains language identical to §16(b), is also unconstitutional. *Salas*, 889 F.3d at 686–688 ("*Dimaya* compels the conclusion that § 924(c)(3)(B) is unconstitutional, too."). Accordingly, the Court concludes that Petitioner's vagueness challenge to § 924(c)(3)(B) has been resolved in his favor by the Tenth Circuit Court of Appeals and the Supreme Court. Petitioner's convictions under § 924(c) can therefore stand only if his predicate offense, Hobbs Act robbery contrary to § 1951(a), qualifies as a crime of violence under the elements clause.

When determining whether a prior conviction is a crime of violence, the Court takes "a formal categorical approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990). In applying *Taylor*, the Tenth Circuit Court of Appeals has held that if "the statute is ambiguous, or broad enough to encompass both violent and nonviolent crimes, a court can look beyond the statute 'to certain records of the prior proceeding, such as the charging documents, the judgment, any plea thereto, and findings by the [sentencing] court.'" *United States v. Dwyer*, 245 F.3d 1168, 1171 (10th Cir. 2001) (quoting *United States v. Zamora*, 222 F.3d 756, 764 (10th Cir. 2000)).

Section 1951 criminalizes interference with commerce by threats or violence. It provides that, "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or

purpose to do anything in violation of this section" is guilty of violating the Hobbs Act.

§ 1951(a). "The Hobbs Act . . . is a divisible statute setting out two separate crimes—Hobbs Act robbery and Hobbs Act extortion." United States v. O'Connor, 874 F.3d 1147, 1152 (10th Cir. 2017) (citing *United States v. Gooch*, 850 F.3d 285, 291-92 (6th Cir. 2017) (noting that the Hobbs Act defines robbery and extortion in separate provisions and that all circuits to consider the issue have found it to be divisible)). It is undisputed that Petitioner was convicted of Hobbs Act robbery. *See* CR Doc. 222; CV Doc. 1 at 1–2; CV Doc. 10 at 2; CV Doc. 13 at 1–2. As used in § 1951(a),

> The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

§ 1951(b)(1).

Petitioner argues that Hobbs Act robbery does not require an element of physical force because the offense can be committed by causing fear of injury through means other than physical force, it may involve force that is only minimal, and it may be accomplished by causing fear of injury to property. CV Doc. 1 at 7–8; CV Doc. 10 at 17–21. The United States maintains that Hobbs Act robbery does contain an element of force and remains a crime of violence under § 924(c)(3)(A) because it "necessarily entails the attempted or threatened use of physical force." CV Doc. 13 at 10. The United States relies on *United States v. Moreno*, 665 F. App'x 678, 681 (10th Cir. 2016) (unpublished), which held that Hobbs Act robbery is a crime of violence under the elements clause in § 924(c)(3)(A), and on numerous cases from other circuits that have reached the same conclusion. If *Moreno* were a published case it would be binding on this Court

and that would end the inquiry; however, *Moreno* is unpublished, and the cases of other circuits may be persuasive but do not control the issue.

Petitioner bases his argument primarily on *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*) and *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005). In *Johnson I*, the Supreme Court interpreted the elements clause of the ACCA, which defines a violent felony as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). *Johnson I* held that "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. Section 924(c)(3)(A) is similar but not identical to the ACCA. *See* § 924(c)(3)(A) (defining a crime of violence as one that "has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another" (emphasis added)).

Petitioner assumes that *Johnson I* applies equally to § 924(c)(3)(A) despite its textual differences from the ACCA, and contends that a crime of violence under § 924(c)(3) must also contain an element of force against a person. The Tenth Circuit Court of Appeals has held that, "Because Hobbs Act robbery criminalizes conduct involving threats to property, it does not qualify as a crime of violence under the Guidelines' force clause." *United States v. O'Connor*, 874 F.3d 1147, 1158 (10th Cir. 2017). However, the Guidelines provision addressed in *O'Connor* is identical to the elements clause of the ACCA and is applicable only to crimes that necessarily entail the use or threatened use of physical force against a person. *Id.* "There is nothing incongruous about holding that Hobbs Act robbery is a crime of violence for purposes of 18 U.S.C. § 924(c)(3)(A), which includes force against a person or property, but not for purposes of U.S.S.G. § 4B1.2(a)(1), which is limited to force against a person." Accordingly, the Court

concludes that for the purposes of § 924(c)(3), a crime of violence may involve physical force that is directed against property rather than another person.

Relying on *Perez-Vargas*, Petitioner next contends that Hobbs Act robbery is not a crime of violence because "fear of injury" may be caused by means that involve minimal physical force or no force at all. In *Perez-Vargas*, the Tenth Circuit Court of Appeals analyzed Colorado's third degree assault statute, which criminalized the knowing or reckless causation of bodily injury without requiring that the injury be caused by any specific means. 414 F.3d at 1285. The Court determined that the offense was not a crime of violence because the statute would allow conviction based on acts "that would not use or threaten the use of physical force: recklessly shooting a gun in the air to celebrate, intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Id.* at 1286–87.

But, as recognized in *United States v. McCranie*, 889 F.3d 677, 679 (10th Cir. 2018), *Perez-Vargas* has been overruled. The Tenth Circuit Court of Appeals has concluded that the Supreme Court "specifically rejected the contention that 'one can cause bodily injury without the use of physical force.'" *United States v. Ontiveros*, 875 F.3d 533, 536–37 (10th Cir. 2017) (quoting *United States v. Castleman*, ___ U.S. ___, 134 S.Ct. 1405, 1414 (2014)). Although *Castleman* addressed the force required for a misdemeanor crime of violence rather than the force involved under the ACCA or § 924(c)(3), its reasoning applies equally to physical force in the context of violent felonies. *Ontiveros*, 875 F.3d at 537–38. "'[P]hysical force' is simply 'force exerted by and through concrete bodies,' as opposed to 'intellectual force or emotional force.'" *Castleman*, 134 S.Ct. at 1414 (quoting *Johnson I*, 559 U.S. at 138). This includes the indirect application of force, and even the omission of action. *Ontiveros*, 875 F.3d at 538; *see also United States v. Cravens*, 719 F. App'x 810, 816 (10th Cir. 2017) ("[T]he 'use of physical

force' necessary to satisfy the elements clause of § 924(c)(3)(A) includes the indirect application of force, i.e., exposing one to hazardous chemicals."). If an injury may not be caused without the use of physical force, then causing fear of injury would necessarily entail at least the threatened use of physical force. *See McCranie*, 889 F.3d at 680–81 ("Bank robbery by intimidation [under 18 U.S.C. § 2113(a)] involves the threatened use of physical force" so is a crime of violence.); *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018) (rejecting the argument that "threatening to throw paint on the victim's house, to spray paint his car, or . . . to pour chocolate syrup on his passport" would be sufficient to constitute Hobbs Act robbery through fear of injury but would not necessarily involve the use or threatened use of physical force).

The Court concludes that the overruling of *Perez-Vargas* has foreclosed Petitioner's argument regarding indirect force, and that his arguments as to the quantum of force are not persuasive. Without citation or analysis, the Tenth Circuit Court of Appeals has stated in a published opinion that, "Violent force is required to sustain a conviction under the Hobbs Act." *United States v. Thomas*, 849 F.3d 906, 909 (10th Cir. 2017) (citing definition from *Johnson I*). Additionally, *Moreno* directly contradicts Petitioner's assertions, *see* 665 F. App'x at 681, and Petitioner presents no reason to depart from the Tenth Circuit on this issue other than that the *Moreno* opinion is unpublished.

In *Moreno*, the Tenth Circuit Court of Appeals held that the definition of robbery in § 1951(b)(1) "requires use of actual or threatened force or violence" and "parallel[s] the requirements for finding a 'crime of violence' under § 924(c)(3)(A)." 665 F. App'x at 681. The eight other circuits that have considered this issue are all in agreement that Hobbs Act robbery qualifies as a crime of violence under the elements clause in § 924(c)(3)(A). *See Hill*, 890 F.3d 51 (2d Cir. 2018); *United States v. Robinson*, 844 F.3d 137, 141–144 (3d Cir. 2016); *United*

*States v. Buck*, 847 F.3d 267, 274-75 (5th Cir. 2017); *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017); *United States v. Anglin*, 846 F.3d 954, 965 (7th Cir. 2017); *United States v. House*, 825 F.3d 381, 387 (8th Cir. 2016); *United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016) (unpublished); *In re Saint Fleur*, 824 F.3d 1337, 1340–41 (11th Cir. 2016). Other decisions within this district have also reached the same conclusion. *See United States v. Chavez*, No. 16-CR-2934 MV, 2017 WL 6375366, *5 (D.N.M. Dec. 12, 2017); *United States v. Lopez-Aguilar*, Nos. 16-CV-668 WJ/CG & 09-CR-2962 WJ, 2017 WL 3190720, *5 (D.N.M. May 18, 2017); *United States v. Rojas*, Nos. 16-CV-675 MCA/KBM & 05-CR-1618 MCA, 2017 WL 3588646, *5 (D.N.M. Mar. 6, 2017); *United States v. Francia*, Nos. 16-CV-772 JB/GJF & 12-CR-3025 JB, 2017 WL 2266852, *6 (D.N.M. Feb. 28, 2017); *United States v. Castillo*, No. 15-CR-205 JH, 2016 WL 10267677, *4–7 (D.N.M. May 2, 2016). The Court finds this reasoning and consensus persuasive and concludes that Hobbs Act robbery constitutes a crime of violence under § 924(c)(3)(A). Petitioner's predicate offense therefore remains a crime of violence and Petitioner is not entitled to relief based on the *Johnson II* ruling.

**B.** *Rosemond* **Claim**

Petitioner contends that even if his § 1951(a) offense remains a crime of violence, his conviction under § 924(c) cannot stand because he is innocent of that charge under *Rosemond*, 134 S. Ct. 1240. Petitioner was convicted on two counts of violating § 924(c) under a theory that although his companion actually carried the gun during the Silver City and Clovis robberies, Petitioner had aided and abetted the offenses. *Wiseman*, 172 F.3d at 1217. In *Rosemond*, the United States Supreme Court abrogated the legal standard of conviction for aiding and abetting a § 924(c) offense that had been announced by the Tenth Circuit Court of Appeals in its decision on Petitioner's direct appeal. 134 S. Ct. at 1244–45, 1249–50.

Liability for aiding and abetting requires participation in the commission of an offense with the intent to facilitate the crime. *Id.* at 1246. While the act of assistance may be partial and minimal, the offender must intend to facilitate the entire crime. *Id.*at 1246–48. The offense proscribed by § 924(c) contains two essential conduct elements: (1) using or carrying a firearm; (2) during a crime of violence or drug trafficking offense. *See United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999). Accordingly, conviction for aiding and abetting a violation of § 924(c) requires "not just an act facilitating one or another element, but also a state of mind extending to the entire crime[,]" including the use of a firearm. *Rosemond*, 134 S. Ct. at 1248.

On Petitioner's direct appeal, the Tenth Circuit had required that Petitioner "knowingly and actively participated in the robberies and that he knew that [his accomplice] was carrying the firearm." *Wiseman*, 172 F.3d at 1217. Intent to facilitate a crime may be inferred from knowledge of the circumstances. *Rosemond*, 134 S. Ct. at 1248. However, *Rosemond* determined that a conviction for aiding and abetting a violation of § 924(c) required not only knowledge of the firearm, but "knowledge at a time the accomplice can do something with it—most notably, to walk away." *Id.* at 1249–50. The intent to facilitate an armed offense may only be inferred if the unarmed accomplice had advance knowledge that a firearm would be used, so that the decision to continue the criminal enterprise demonstrates an intent to assist in crime that involves a gun. *Id.* at 1249. Because the Tenth Circuit had allowed conviction regardless of when the knowledge of the firearm was obtained, *Rosemond* abrogated the standard in *Wiseman*.

Petitioner contends that his § 924(c) convictions must be vacated on that basis. But before the Court addresses the merits of this claim, it must ascertain whether Petitioner is permitted to raise this argument in his First Amended Motion. The Tenth Circuit Court of Appeals previously denied Petitioner's motion for authorization to file a second or successive

§ 2255 motion based on *Rosemond*. *See In re Wiseman*, No. 16-2239 (10th Cir. Dec. 29, 2016). However, the Order did not address the merits of the claim; instead, it concluded that *Rosemond* did not satisfy § 2255(h)(2) because it was not a new rule of constitutional law made retroactively applicable by the Supreme Court. *Id.* In concurrence with the decision, Circuit Judge Harris Hartz noted that the panel was deciding the motion under § 2255(h) because Petitioner had presented the claim as a second or successive § 2255 motion, but that it might not be subject to those restrictions since Petitioner was challenging an amended judgment. *Id.* (Hartz, J., concurring) (citing *Magwood v. Patterson*, 561 U.S. 320, 341–42 (2010). The Tenth Circuit has since determined that Petitioner's First Amended Motion is not second or successive under *Magwood*, and it has remanded the First Amended Motion to this Court to decide the merits of Petitioner's claims. CV Doc. 22. The Court therefore concludes that Petitioner's *Rosemond* claim is part of an initial § 2255 motion and is not foreclosed by the Tenth Circuit's prior denial of authorization to file.

The United States asserts that *Rosemond* is not retroactively applicable to Petitioner's claim for collateral review. However, as the United States acknowledges, *Rosemond* is a decision of statutory interpretation. *See In re Wiseman*, No. 16-2239 (10th Cir. Dec. 29, 2016). Consequently, it does not announce a new rule of law. *See Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312–13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."). The nonretroactivity rule of *Teague v. Lane*, 489 U.S. 288, 310 (1989), "is inapplicable to the situation in which [the Supreme] Court decides the meaning of a criminal statute enacted by Congress." *Bousley v. United States*, 523 U.S. 614, 619–21 (1998). In Petitioner's first § 2255 motion, the Tenth Circuit Court of Appeals applied this reasoning when

granting Petitioner relief under *Castillo v. United States*, 530 U.S. 120 (2000). *See United States v. Wiseman*, 297 F.3d 975, 980–82 (2002).

> "'[A] statute cannot mean one thing prior to the Supreme Court's interpretation and something entirely different afterwards.' (quotation omitted). By considering on collateral review a statute that was interpreted after the defendant's conviction became final, a court is simply applying the substantive law as it existed at the time the crime was committed. Retroactive application of the newly announced interpretation merely ensures that the defendant's trial conformed to the law in effect at the time of the proceedings. Thus, the finality concerns that support the *Teague* nonretroactivity rule are not present."

*Id.* at 981 (quoting *United States v. Shelton*, 848 F.2d 1485, 1489 (10th Cir.1988) (en banc)). The Court concluded that *Castillo* applied retroactively because it "was based solely on [the Supreme Court's] interpretation of § 924(c)(1)[.]" *Id.* Petitioner was not required to demonstrate that the Supreme Court had specifically made the holding in *Castillo* retroactive because he brought his claim in an initial § 2255 motion. *Id.* at 982 n.2 (citing *Browning v. United States*, 241 F.3d 1262, 1264 (10th Cir. 2001) (en banc) ("*Teague*'s retroactivity analysis thus determines whether the new rule is applicable to an *initial* motion for collateral habeas relief." (emphasis in original))). Following this logic, the Court concludes that *Rosemond* is retroactively applicable to Petitioner's First Amended Motion. *See Montana v. Cross*, 829 F.3d 775, 783–84 (7th Cir. 2016) (holding that *Rosemond* is retroactively applicable).

Nevertheless, the United States argues that Petitioner's *Rosemond* claim is barred because it is untimely. An initial motion under § 2255 must be filed within one year from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Petitioner's amended judgment of conviction became final in October of 2002 after the expiration of his time for appeal. CR Doc. 222. *Rosemond* was decided on March 5, 2014. 134 S. Ct. 1240.

Petitioner did not bring his *Rosemond* claim in this Court until May 16, 2017, when he filed the First Amended Motion. This was more than a year after the decision in *Rosemond*, even assuming it met the requirements of § 2255(f)(3), and many years after Petitioner's amended judgment became final. Petitioner's *Rosemond* claim is therefore barred as untimely unless the First Amended Motion was filed within one year from (1) the removal of an illegal or unconstitutional government-created impediment that prevented Petitioner from making his motion, *see* § 2255(f)(2), or (2) the date on which Petitioner could have first discovered the facts supporting his claim, *see* § 2255(f)(4). Petitioner does not argue that he did not know the facts supporting his claim, and he could not, since the claim is based on his knowledge at the time of his crime and the evidence presented at his trial. *See* First Amended Motion at 7, 9–12. The Court will therefore consider only the applicability of § 2255(f)(2).

Relying on § 2255(f)(2) Petitioner argues that he was denied access to an adequate law library and the resources he needed to draft and file his § 2255 motion. He characterizes this lack of access as an impediment created by the government, which was removed only on May 19, 2016, when he was appointed counsel in relation to his *Johnson* claim. Petitioner contends that his claims are timely because he filed his First Amended Motion within one year of this date. Although Petitioner did not make this argument in his First Amended Motion, the Court will consider the issue as raised in Petitioner's Reply to the United States' assertion of the defense of untimeliness in its Response. *See Day*, 547 U.S. at 209 (the statute of limitations is an affirmative

defense under AEDPA); *Kilgore v. Attorney General of Colorado*, 519 F.3d 1084, 1089 (10th Cir. 2008) (Habeas "petitioner does not bear a heightened burden of pleading timeliness." (discussing § 2254)). *Yapp v. Excel Corp.*, 186 F.3d 1222, 1236 (10th Cir. 1999) ("[I]t is not the burden of a plaintiff to anticipate, raise, and negate affirmative defenses[.]").

In support of Petitioner's claim that his limited access to legal resources constitutes an "impediment" cognizable under § 2255(f)(2), Petitioner cites *Estremera v. United States*, 724 F.3d 773, 776–77 (7th Cir. 2013), *Egerton v. Cockrell*, 334 F.3d 433, 438 (5th Cir. 2003), and *Whalem v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc). In *Estremera*, the Seventh Circuit Court of Appeals held that "the absence of library access may be an 'impediment' in principle, [but that] is not necessarily to say that lack of access was an impediment for a given prisoner." 24 F.3d at 777. The *Estremera* Court concluded that an evidentiary hearing would be needed to resolve questions concerning what access the petitioner had at what time, whether the petitioner had sought further access, and whether the unavailability of a law library had actually impeded the particular claim. *Id.*

The Fifth Circuit Court of Appeals followed a similar process in *Egerton*, which addressed the inadequacy of a law library as a state-created impediment under § 2244(d)(1)(B). 334 F.3d at 436. Section 2244(d)(1)(B) is identical to § 2255(f)(2) except that it applies to "a person in custody pursuant to the judgment of a State court." *Id.* at 437. In *Egerton*, the petitioner alleged that he was denied access to a law library containing federal materials, including access to a copy of AEDPA. *Id.* at 435. The Court concluded that "[t]he State's failure to make available to a prisoner the AEDPA, which sets forth the basic procedural rules the prisoner must follow in order to avoid having his habeas petition summarily thrown out of court, including the newly imposed statute of limitations, is just as much of an impediment as if the State were to

take 'affirmative steps' to prevent the petitioner from filing the application." *Id.* at 438.

Additionally, "[t]he absence of all federal materials from a prison library (without making some alternative arrangements to apprise prisoners of their rights) violates the First Amendment right, through the Fourteenth Amendment, to access to the courts." *Id.* (citing *Bounds v. Smith*, 430 U.S. 817 (1977) (requiring adequate prison law libraries or some alternative means of informing prisoners about their legal rights and options); *Lewis v. Casey*, 518 U.S. 343 (1996) (narrowing *Bounds* to require only legal information related to challenging convictions and conditions of confinement)). The Court first remanded the claim and instructed the State to set forth any evidence that the petitioner had access to a copy of AEDPA or was aware of its existence. *Id.* at 435. After the State failed to provide any evidence that a copy of AEDPA was available, the Court vacated the district court's dismissal of the petition as time-barred. *Id.* at 439.

In *Whalem/Hunt v. Early*, the Ninth Circuit Court of Appeals likewise concluded that the unavailability of the AEDPA in a prison law library may create an "impediment" for purposes of § 2244(d)(1)(B), but that the determination was "highly fact-dependent" so that a remand was necessary to allow development of the factual record. 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc). Petitioner asserts in his Reply that he "was denied access to an adequate law library and resources pertinent to drafting and filing his motion under § 2255." CV Doc. 18 at 12. He argues that this entitles him to file his First Amended Petition within one year from the date counsel was appointed to represent him on a different matter, or by May 19, 2017. *Id.* But Petitioner does not provide any factual background as to the limitations of his access, his need for resources, or his attempts to obtain the necessary legal help. Under these circumstances, the Court would generally be required to hold an evidentiary hearing. However, the Rules Governing Section 2255 Proceedings for the United States District Courts allow the Court to expand the record with

additional materials related to the motion. *See* Rule 7, 28 U.S.C. foll. § 2255; Rules Governing §

2254 Cases, Rule 7, 28 U.S.C.A. foll. § 2254 (The Court may expand the record on the Court's

own motion); *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970) (noting that expansion

of the record may be appropriate to "avoid the necessity for an expensive and time consuming

evidentiary hearing[.]"). Accordingly, the Court will take judicial notice of the facts as Petitioner

has previously alleged them in his filings with the Tenth Circuit Court of Appeals regarding this

claim. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th

Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in

other courts, both within and without the federal judicial system, if those proceedings have a

direct relation to matters at issue.").

     In Petitioner's October 2016 application to the Tenth Circuit Court of Appeals for

authorization to file a second § 2255 motion based on *Rosemond*, Petitioner described the

limitations to his law library access in greater detail. *See In re Wiseman*, No. 16-2239 (10th Cir.

Oct. 20, 2016). Petitioner stated that he was incarcerated in the Iowa State Penitentiary in Ft.

Madison, Iowa, and he had been in that facility since March 2014 when *Rosemond* was decided.

*Id.* Petitioner alleged that the prison law library had not been updated since 2001, and the prison

provided access to a contract attorney only for assistance in pending Iowa state cases or federal

complaints brought under 42 U.S.C. § 1983. *Id.* Access through the state law library was not a

realistic option because it charged a per-page fee for copies of cases and would only provide

them upon submission of payment along with the case name and citation. *Id.* Consequently,

Petitioner did not have access to current federal law until September 2015 when the prison

computers were updated with a LEXIS CD database that was kept current every 90 days. *Id.*

Petitioner supported his allegations of limited access to legal resources with an affidavit from the

Iowa State Prison librarian, who averred that the prison law library was not updated between 2001 and September 2015. *Id.*

Petitioner's lack of access to the *Rosemond* decision due to the limitations of the prison law library might constitute an impediment under § 2255(f)(2). However, even if the Court assumes that § 2255(f)(2) is applicable, the Court disagrees that this finding would extend Petitioner's time for filing until May 19, 2017. Both the affidavit of the law librarian and Petitioner's application to the Tenth Circuit state that the prison law library was updated in September 2015 and thereafter provided access to the law that was made current every 90 days. The Court therefore finds that Petitioner had access to *Rosemond* as of September 2015, which under § 2255(f)(2) would give him until September 2016 to file his claim. Petitioner first filed his *Rosemond* claim in the Tenth Circuit on October 20, 2016, and he did not raise it in this Court until his First Amended Motion, filed on May 16, 2017. Accordingly, the Court concludes that Petitioner's *Rosemond* claim is untimely.

Petitioner argues that his untimeliness should be excused because he is actually innocent of the § 924(c) offenses under *Rosemond*. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (addressing the limitations of § 2244(d)). However, "tenable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329); *see House v. Bell*, 547 U.S. 518, 538 (emphasizing that the *Schlup* standard is "demanding" and seldom met). "The gateway should open only when a petition presents 'evidence of innocence so strong

that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin*, 569 U.S. at 401 (quoting *Schlup*, 513 U.S. at 316). To be credible, Petitioner is required to support his claim of actual innocence "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner contends that no juror would have found him guilty at trial if the *Rosemond* standard had been applied because there is no evidence that he had advance knowledge that his accomplice would use a firearm in the Silver City and Clovis robberies. However, Petitioner does not present any new exculpatory evidence. A new statutory interpretation does not constitute new evidence. *See Prost v. Anderson*, 636 F.3d 578, 581 (10th Cir. 2011). An initial § 2255 motion based on a new statutory interpretation may permissibly be filed within one year of that decision, § 2255(f)(3), or of any other applicable provision of § 2255(f). But if the Court were to construe a change in statutory interpretation as a demonstration of actual innocence that justified avoidance of this one-year bar even when no new evidence was presented, it would render the terms of § 2255(f) a nullity for statutory claims. The Court declines to endorse this result, and concludes that Petitioner is not entitled to have his *Rosemond* claim deemed timely.

However, even if the Court were to consider the merits of Petitioner's claim, it would not change the result. Petitioner contends that his § 924(c) convictions must be vacated because the jury was not instructed that he needed to have advance knowledge of his accomplice's intent to use a firearm during the robberies in Silver City and Clovis and there is no evidence demonstrating that he had such knowledge. In *Rosemond*, the Supreme Court determined that a conviction for aiding and abetting a violation of § 924(c) required advance knowledge that a

firearm would be used. 134 S. Ct. at 1249. However, it clarified that "[o]f course, if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge. In any criminal case, after all, the factfinder can draw inferences about a defendant's intent based on all the facts and circumstances of a crime's commission." *Id.* at 1250 n.9. "This means that even where the offense at issue is compound, knowledge of the firearm arising after the initiation of the offense may be sufficient to support an aiding and abetting conviction." *United States v. Seabrooks*, 839 F.3d 1326, 1335 (11th Cir. 2016).

*Rosemond* involved a drug deal in which one of the participants had fired a gun, but there was a dispute as to whether the defendant or one of his companions had been the shooter. 134 S. Ct. at 1243. The trial court instructed the jury that it could find the defendant guilty of aiding and abetting the § 924(c) violation if "(1) the defendant knew his cohort used a firearm in the drug trafficking crime, and (2) the defendant knowingly and actively participated in the drug trafficking crime." *Id.* at 1244 (internal quotation marks omitted). The Supreme Court concluded that the trial court's jury instructions were erroneous because they failed to require that the defendant had advance knowledge of the gun. *Id.* at 1243. The Court vacated the conviction and remanded for determination of whether the error was harmless.

At Petitioner's trial, the jury instructions described two elements required for conviction under § 924(c): (1) that Petitioner committed the robberies in Silver City and Clovis; and (2) that Petitioner knowingly used or carried a firearm during and in relation to his commission of those robberies. CR Doc. 145. In case the jury concluded that Petitioner's conduct did not fulfill these elements but his accomplice had met the requirements for conviction under § 924(c), a separate instruction addressed Petitioner's liability for aiding and abetting a § 924(c) violation under § 2.

*Id.* Under this theory, the jury was required to find that "every element of the offense as defined in these instructions was committed by some person or persons, and that [Petitioner] voluntarily participated in its commission with the intent to violate the law." *Id.* These instructions are not so clearly erroneous as those in *Rosemond*, since they could be interpreted to include the common-law requirement that an aider and abettor must have the intent to facilitate the entire offense, including, in the case of § 924(c), the firearm element. *See* 134 S. Ct. at 1245–50; *United States v. Davis*, 750 F.3d 1186, 1192 (10th Cir. 2014) (holding that jury instructions were not clearly erroneous under *Rosemond* when they did not mention advance knowledge but required that the defendant "consciously shared the other person's knowledge of the underlying criminal act and intended to help him or her."). However, because the instructions do not clearly specify the requirement of advance knowledge, the Court will consider whether any alleged error was harmless. *See United States v. Dago*, 441 F.3d 1238, 1245 (10th Cir. 2006) ("'[T]he omission of an element from a jury instruction is subject to harmless-error analysis.'" (quoting *Neder v. United States*, 527 U.S. 1, 10 (1999))).

"In evaluating convictions on collateral review, the harmless error inquiry 'is whether the error had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Rivera*, 347 F.3d 850, 852 (10th Cir. 2003) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). The evidence in this case demonstrated that beginning on September 22, 1995, Petitioner and his companion carried out a planned series of six grocery store robberies in New Mexico, of which the Silver City robbery and the Clovis robbery were the last two. *Wiseman*, 172 F.3d 1201–03. Petitioner and his accomplice used air pistols in the first four robberies. *Id.* at 1201–03, 1218. During the Silver City robbery, committed on November 7, 1995, Petitioner approached the assistant store manager with a gun, later shown to be an air pistol, and ordered

him to open the safe. *Id.* at 1202–03. Petitioner's accomplice was present and displayed a Tec-9 firearm, so that it was visible to the store manager. *Id.* at 1203. Petitioner and his accomplice obtained $3000 or $4000 dollars from the Silver City store. *Id.* at 1202. Similarly in the Clovis robbery on November 15, 1995, Petitioner approached the store manager, opened his jacket to show that he was carrying a gun, and stated, "This is a real gun, this is a real robbery. And the man behind him has a real gun, also." *Id.*; CR Doc. 255, Ex. 2, trial transcript 113:1–2. Although Petitioner's gun may have been an air pistol, Petitioner's accomplice was also present, and he opened his jacket to show the manager the Tec-9 firearm. *Id.* Petitioner did not appear surprised by the weapon, and he continued to participate in the robbery, walking about 15 feet away from his accomplice. CR Doc. 255, Ex. 2 114:4–115:6. The pair took more than $5000 in this Clovis robbery. *Id.* Petitioner and his accomplice then fled to Arkansas, where they were apprehended after a high-speed chase during which they threw a duffel bag containing cash and the Tec-9 firearm out of the car. *Id.* These facts demonstrates that Petitioner assisted in planning and carrying out a series of what appeared to be armed robberies, with air pistols, and that he continued to participate in that criminal enterprise after his confederate twice used an actual firearm in a visible manner in Petitioner's presence. The Court concludes that this evidence is sufficient for the jury to have inferred Petitioner's intent to facilitate an armed offense, and that there is no "evidence that could rationally lead to a contrary finding with respect to the omitted element." *Neder*, 527 U.S. at 19; *see United States v. Lawson*, 810 F.3d 1032, 1041 (7th Cir. 2016) (concluding that any instructional error as to intent under *Rosemond* was harmless because it was "implausible that such a mid-day robbery plan would not have included a firearm designed to influence and threaten the employees or patrons that are sure to be there."). Consequently, any

instructional error was harmless and Petitioner is not entitled to relief from his § 924(c) convictions under *Rosemond*.

### C. *Weekes* Claim

Petitioner brings his final claim under *Weekes*, which the Tenth Circuit Court of Appeals decided on August 14, 2002. 301 F.3d 1175. In *Weekes*, a federal inmate appealed the dismissal of his habeas corpus petition under 28 U.S.C. § 2241, in which he had argued that he was entitled to credit on his federal sentence for time spent in state custody because his federal sentence had commenced prior to his erroneous transfer to state authorities. *Id.* at 1176. The United States had primary custody of the inmate at the time the federal sentence was imposed, and had designated him as a federal prisoner before it prematurely returned him to state custody, where he served a state sentence that was intended to run consecutively to the federal sentence. *Id.* at 1181–82. Consequently, the Tenth Circuit Court of Appeals held that he must be given credit toward the remainder of the federal sentence for the time in state custody because the federal sentence had already begun and could not be interrupted unless through the fault of the prisoner. *Id.* at 1180–82 (citing *White v. Pearlman*, 42 F.2d 788, 789 (10th Cir. 1930) ("A sentence . . . means a continuous sentence, unless interrupted by . . . some fault of the prisoner, and he cannot be required to serve it in installments.").

Petitioner contends that he was similarly designated as a federal prisoner on September 11, 1997, after his sentencing in this case, and he therefore argues that his federal sentence commenced on that date and has run continuously since then, despite his transfer back to state custody on October 27, 1997. Although Petitioner has filed this claim as part of his § 2255 motion, the Court will construe it as an application for habeas relief under 28 U.S.C. § 2241. *See United States v. Eccleston*, 521 F.3d 1249, 1253 (10th Cir. 2008) (a challenge to the execution of

a sentence falls under § 2241 not § 2255); *Binford v. United States*, 436 F.3d 1252, 1253 n.2 (10th Cir. 2006) (*Weekes* claim filed under § 2255 was properly construed as a § 2241 petition). "Requests for sentence credit, or for recalculation of time yet to serve . . . must be presented to the Attorney General (or [his] delegate, the Bureau of Prisons), and adverse decisions may be reviewed by an action under 28 U.S.C. § 2241 . . .." *United States v. Storm*, 281 F. App'x 830, 832 (10th Cir. 2008) (quoting *Romandine v. United States*, 206 F.3d 731, 736 (7th Cir. 2000)).

"A § 2255 petition and a § 2241 petition serve distinct purposes. A § 2255 petition attacks the legality of a conviction or sentence and must be filed in the district that imposed the sentence, while a § 2241 petition attacks the execution of a sentence and must be filed in the district where the prisoner is confined." *Purvis v. Wiley*, 214 F. App'x 774, 776 (10th Cir. 2007) (citing *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir.1996)). Petitioner is not confined in the District of New Mexico, and accordingly the Court lacks jurisdiction to rule on the merits of his *Weekes* claim. *See Storm*, 281 F. App'x at 832.

Petitioner concedes that the Court does not have jurisdiction over his claim under *Weekes*, and that it should have been filed as a § 2241 petition in the Southern District of Iowa, where Petitioner is confined. CR Doc. 254. But Petitioner requests that the Court transfer his *Weekes* claim to the Southern District of Iowa rather than dismissing it. "[I]f a district court determines that it lacks jurisdiction over a civil action, it 'shall, *if it is in the interest of justice*, transfer such action . . . to any other such court in which the action . . . could have been brought.'" *In re Cline*, 531 F.3d 1249, 1251 (quoting 28 U.S.C. § 1631) (emphasis in original). "Factors considered in deciding whether a transfer is in the interest of justice include whether the claims would be time barred if filed anew in the proper forum, whether the claims alleged are

likely to have merit, and whether the claims were filed in good faith or if, on the other hand, it was clear at the time of filing that the court lacked the requisite jurisdiction." *Id.*

The United States asserts that Petitioner's *Weekes* claim is untimely under the one-year filing period allowed by § 2255. However, it is not clear that this limitation would apply to a habeas petition under § 2241 challenging the execution of a federal sentence in the Eighth Circuit, which encompasses the Southern District of Iowa. *See Mathena v. United States*, 577 F.3d 943, 945 (8th Cir. 2009)(acknowledging that no statute of limitation applies in the Seventh Circuit and noting that the Eighth Circuit has not decided the issue); *Bissonette v. Dooley*, CIV. 16–5120–JLV, 2017 WL 3995557 (D. S.D., Sept. 11, 2017) ("If a prisoner properly seeks habeas corpus relief under § 2241, there is no statute of limitations applicable to the petition."). It appears that Petitioner's § 2241 claim will not be time-barred if it is refiled in the appropriate court. Even if a one-year limitation is applicable to his § 2241 petition, refiling will not prejudice Petitioner since the one-year period had already expired when he filed his First Amended Motion. The Court finds that this factor weighs against transfer.

The United States further contends that Petitioner's claim is foreclosed on the merits by *Binford*. "[A] court is authorized to consider the consequences of a transfer by taking 'a peek at the merits' to avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610–11 (7th Cir. 1999)). However, neither *Weekes* nor *Binford* will bind the judges in the Southern District of Iowa, since both cases are Tenth Circuit law. After brief review, the Court concludes that Petitioner's claim that he is entitled to credit on his federal sentence for time spent in state custody does not seem "clearly doomed" in the Eighth Circuit. *See Elwell v. Fisher*, 716 F.3d 477, 481–82 (commencement of a

federal sentence is determined by which sovereign takes primary jurisdiction). However, resolution of the issue will require thorough analysis of the factual background and the legal merits under Eighth Circuit law, and Petitioner has not raised this in the pleadings he filed in this Court, nor has the United States addressed Eighth Circuit law in its Response. Additionally, both the First Amended Motion and its related responsive pleadings are largely devoted to the discussion of claims that are unrelated to the § 2241 petition. The Court believes that the transfer of these pleadings to the Southern District of Iowa would be an inefficient use of judicial and the parties' resources. Accordingly, the Court expresses no opinion as to the merits of Petitioner's claim under Eighth Circuit law but finds that this factor nonetheless suggests that refiling in an Eighth Circuit District Court is preferable.

Finally, while the United States does not allege that Petitioner acted in bad faith, it was clear at the time of filing that the Court did not have jurisdiction to decide this claim. Because Petitioner should have known that he was required to file a § 2241 petition in the appropriate court and could have done so, this factor also weighs against transfer. The Court therefore finds that transfer of Petitioner's claim is not in the interest of justice. Accordingly, the Court will dismiss this claim for lack of jurisdiction without prejudice to Petitioner's right to seek relief under § 2241 in the district where he is confined.

## II.    CONCLUSION

The Court concludes that Petitioner's FIRST AMENDED MOTION TO VACATE JUDGMENT UNDER 28 U.S.C. § 2255 (CV Doc. 10) should be denied. The Court further determines, under Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, that Petitioner has failed to make a substantial showing that he has been

denied a constitutional right as required by 28 U.S.C. § 2253(c)(2). Accordingly, the Court will deny a certificate of appealability.

IT IS THEREFORE ORDERED that:

(1)     Petitioner's FIRST AMENDED MOTION TO VACATE JUDGMENT UNDER 28 U.S.C. § 2255 (CV Doc. 10) is DENIED;

(2)     A certificate of appealability is DENIED;

(3)     Petitioner's claims under *Johnson* and *Rosemond* will be dismissed with prejudice; and

(4)     Petitioner's claim as to the execution of his federal sentence will be construed as a petition under § 2241 and will be dismissed without prejudice for lack of jurisdiction.

_____
SENIOR UNITED STATES DISTRICT JUDGE